# SPRADLIN v. COLUMBIA INS. CO. OF NEW YORK.—232 S. W. (2d) 605.

Eastern Section. March 14, 1950.

Petition for Certiorari denied by Supreme Court, June 9, 1950.

18

Stuart F. Dye, of Knoxville, for appellant.

S. E. Hodges and Wm. E. Cooper, both of Knoxville, for appellee.

HALE, J. The primary question in this case involves the rights and duties of the owner of a policy of insurance who was ignorant of its existence.

On April 26th, 1947, the complainant purchased from Spurling & Burns a 1942 Plymouth automobile at the price of $1215.00, of which $615.50 was paid down, leaving balance of $600.00 covered by title retention contract and note executed thereunder.

Unknown to him, there was included in the note the sum of $36.00 as the cost of insurance on this automobile. This insurance was ''comprehensive'', premium $6.00, and ''collision or upset'', premium $30.00, with $50.00 deductible. It was issued May 15th, 1947, by the appellant, at the instance of and delivered to the Tennessee Valley Bank, which had acquired the note in question under the endorsement of the payees, Spurling & Burns. There was a loss payable clause endorsed upon the policy requiring payment of loss or damage to said Bank. The policy was placed with the note.

The note was paid before it was ''finally due'' and the bank, instead of turning the note and policy over to Spradlin mailed them to Spurling & Burns, who, through ''error'', placed them in their files instead of delivering them to Spradlin. We find, as did the Chancellor, that Spradlin had no knowledge of the existence of this policy until he recived an expiration notice, mailed April 15th, 1948, advising him the policy would expire on May 15th, 1948.

The automobile in question was involved in an accident Nov. 15th, 1947. Complainant drove into a filling station to check the air in one of his tires. He stopped the engine and placed the car in reverse gear. He got out of the car and was preparing to gauge his air when the car, for some unknown reason, kicked out of gear, ran down the street, slightly colliding with a truck, and then smashing into a concrete pier near the L. & N. station, causing the damages sued for herein.

Not knowing of the insurance he did not make claim or advise the bank of the damages, but continued with his payments on the note.

The expiration notice he received in April indicated the policy had a $50.00 deductible provision. Complainant is apparently of slight education and understood that he must raise this $50.00 in cash before he could claim the benefits of the policy. So he waited 22 days until he could get this $50.00, and then reported the accident to Mr. Gentry of the Knoxville Underwriters, Inc., which had issued the policy. This was on May 12th. Mr. Gentry referred him to the adjuster, who, on that date, took a written statement from him, which in substance, supports his theory of the case. A few days afterwards, about May 19th, he was instructed to take his automobile to Post & Company for an estimate of the cost of repairs. This he did. The defendant did not agree to the repairs and finally about 3 weeks prior to Sept. 10th refused to pay. Complainant then had the repairs made, paid for them and the present suit resulted.

The policy had these provisions which are relied upon to defeat a recovery:

"I.

"(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft, larceny, robbery or pilferage, to the police but shall not, except at his own cost, offer or pay any reward for recovery of the automobile.

"(c) file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement of the insured setting forth the interest of the insured and of all others in the property affected, any encumbrance thereon, the actual cash value thereof

at time of loss, the amount, place, time and cause of such loss, the amount of rental or other expense for which reimbursement is provided under this policy, together with original receipts therefor, and the description and amounts of all other insurance covering such property.

. . . . . .

"5. Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

The appellant relies upon the case of Georgia Home Ins. Co. v. Jones, 23 Tenn. App. 582, 135 S. W. (2d) 947, 950, to sustain its position that the failure to file proofs of loss within 60 days after the occurrence of the loss barred this claim. The policy in the Jones case provided "all claims for such loss or damage shall be forfeited by failure to furnish such sworn statements within the time provided". *The policy in the instant case has no such provision.* This is a vital distinction, and is referred to by Judge Faw in the Jones Case, supra, where it is said: "In Insurance Company v. Whitaker & Dillard, [112 Tenn. 151, 79 S. W. 119, 64 L. R. A. 451, 105 Am. St. Rep. 916], the court *adopted,* 'as a sound statement of the law', the rule laid down in Joyce on Insurance as follows:

"If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action though he does not furnish proofs within the time designated, provided he does fur-

nish them at some time prior to commencing the action upon the policy. And this has been held to be true even though the policy provide that no action can be maintained until after a full compliance with all the requirements thereof.''

And then said:

''But the rule thus stated cannot avail the plaintiffs in the instant case, for, as we have seen, the policy on which the plaintiffs are suing, *imposes, in expressed terms, a forfeiture for a failure to furnish the specified proof of loss within the time prescribed*''. 23 Tenn. App. at page 590, 135 S. W. (2d) at page 951.

To the same effect are the subsequent cases of Johnson v. Scottish Union, etc., Ins. Co. 160 Tenn. 152, 22 S. W. (2d) 362; Tibbs v. Equitable L. Assur. Soc., 179 Tenn. 594, 168 S. W. (2d) 779;

The complainant submitted to the defendant a written statement of how the loss occurred. This was prepared by the adjuster in charge. It was not sworn to, as required by the policy. No objections were made because of this omission. In Johnson v. Scottish Union, etc. Co., 160 Tenn., supra, at page 156, 22 S. W. (2d) at page 363, it is said:

''By the great weight of authority, if the insured attempts to comply with the requirements of a policy as to notice and proofs of loss, the receipt and retention of such a notice or proof of loss by the insurer without objection constitutes a waiver of its right to object thereto as not satisfying the requirements of the policy. Good faith on the part of the insurer requires that it point out the details in which a notice or proof of loss is insufficient under the contract and give the insured an opportunity to correct these defects. Good faith does not permit an insurer to be silent and evasive under such circumstances.

26 C. J. 399; Joyce on Insurance, Section 589; Ligon's Administrators v. Equitable Fire Insurance Company, 87 Tenn. 341, 10 S. W. 768; Home Insurance Co. v. Wheatley, 6 Tenn. App. 580.

"Such a waiver may be either express or implied. Phoenix Ins. Co. v. Munday, 45 Tenn. 547."

It will be recalled that some four days after the proof of loss was filed, the defendant notified the complainant to take the automobile to Post & Co. for an estimate of the repairs. The adjuster testified he was later instructed by the company to deny liability because of the failure to file proof of loss within 60 days after the date of the loss, and, further, because of prejudice in being unable to see the car and ascertain the damage.

■ We hold the proof of loss was sufficient in form. Then the question, must it have been filed within 60 days after the occurrence of the loss? If so, the complainant's suit must be dismissed. Having found that he did not know of the existence of the policy until April 15, 1948, it would be a manifest impossibility for him to have complied earlier. What are his rights under such circumstances?

■ In 29 Am. Jur. "Insurance", Sec. 1109 pp. 832-833, it is said:

"As a general rule, where the beneficiary of a life or accident insurance policy is ignorant of the existence of the policy, delay in giving notice and furnishing proofs of loss is excused, and in such case, there is a sufficient compliance with the provisions if notice and proofs of loss are made within a reasonable time after the discovery of the existence of the policy. This result has been reached where the policy provided for "immediate" notice and proofs within a certain period of time after the accident or death, as well as where the policies excused

strict compliance with the requirements as to notice if compliance was not shown to have been reasonably possible. However, the lack of knowledge of the policy must be without negligence or fault of the party seeking to be excused.''

In an annotation to Schanzenback v. American Life Ins. Co., S. D., 237 N. W. 737, 75 A. L. R. 1501, at page 1504, it is said: ''In these cases it is held that there is a sufficient compliance with the provisions if notice and proof of loss are made within a reasonable time after the discovery of the existence of the policy.'' Cases from ten states and England are discussed in this annotation.

The cases of Deer Trail Consol. Mining Co. v. Maryland Cas. Co., 36 Wash. 46, 78 P. 135, 67 L. R. A. 275, and Johnson v. Maryland Cas. Co., 73 N. H. 259, 60 A. 1009, 11 Am. St. Rep. 609, relied upon by appellant, state the minority rule insofar as they are in conflict with the general rule before announced.

Neither the auto dealer nor the banker informed the complainant of the procurement of the insurance in question. They were not acting as his agents or in his behalf except so far as his interests protected their interests. They were not interested in him; they were interested in themselves. The record does not indicate they desired to show him how an indebtedness of $600.00 (the amount of the deferred payment) bloomed into $708.00 when he executed his note calling for 12 monthly payments of $59.00 each. Of this excess of $108.00 the sum of $36.00 was for insurance he didn't know he had, and the remainder, $72.00, was for ''service'' charge and interest. And when he paid this amount, it was with much effort that he finally succeeded in getting his note and the policy in question. These ''agents'' were acting in their own business and for their own personal interest.

Under these circumstances, their knowledge would not be imputed to the complainant. 2 Am. Jur. "Agency", sec. 379, p. 299.

On the question of notice, much stress is laid on the case of Phoenix Cotton Oil Co. v. Royal Ins. Co., 140 Tenn. 438, 205 S. W. 128. The policy in that case was to indemnify the assured against suits of employees injured in the course of their employment, and called for immediate written notice of any injury to such employees. An employee was injured at the Covington plant by the assured, but the manager of the Covington plant, although knowing of the injury did not notify the chief office at Memphis or the insurer of such injury. Later the employee brought suit. The insurer was notified and refused to defend. It was held that the insured was relieved of liability under the authority of Blackman v. U. S. Casualty Co., 117 Tenn. 578, 103 S. W. 784 (which contained a forfeiture clause) and Caldwell v. Virginia Fire & Marine Insurance Co., 124 Tenn. 593, 139 S. W. 698, which primarily involved the right of an insurance agent to orally renew a policy of insurance.

In the subsequent case of H. G. Hill Co. v. Georgia Casualty Co., 158 Tenn. 194, 11 S. W. (2d) 684, there was involved an indemnity policy to protect from damages caused by the drivers of trucks owned by the insured. One of these trucks, while driven by a Negro driver, struck a woman. The driver thought her injuries were trifling and did not report the accident to his employer, the assured. Later this woman sued the assured who gave notice to the insurer, which after investigating the case, denied liability because the "immediate notice" required by the policy was not given of the accident. The insurer relied upon the Phoenix Cotton Oil case, supra, as relieving it of liability. In disposing of this the Court,

158 Tenn. at pages 198-199, 11 S. W. (2d) at page 685, said:

"The present cause is distinguishable from that of Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn. 438, 205 S. W. 128. In that case, the manager and highest official of the mill where the employee was injured had actual knowledge of the injury and did not report it. Immediately upon receiving notice the insurer denied liability. It was held that the mere fact that an attorney for the insurer subsequently visited the plant and made an investigation did not amount to a waiver. Counsel for defendant fail to distinguish a servant from an agent."

So it would seem that this latter case is authority to sustain the recovery. If the insured was not required to give "immediate notice" until he had knowledge of the injury, then by a parity of reasoning, it would seem to follow that notice would not be required by an insured until he had knowledge of the *existence* of the policy. "Impossibilium nulla obligatio est."

■ ■ Our courts recognize that delay in giving notice and filing proofs of loss within the prescribed time may be excused under certain circumstances. Massachusetts Mut. Life Ins. Co. v. England, 171 Tenn. 104, 100 S. W. (2d) 982. This is in accord with the general rule as laid down in 45 C. J. S., Insurance, Section 1066, pp. 1295, 1296, where it is said: "The failure to give notice and proof of death within the time fixed in the policy may under certain circumstances be excused." We hold the lack of knowledge of the insured (whom we absolve of negligence), excuses the delay.

It is argued that there was no "collision" in the meaning of that term as used in B-1 of the policy, viz.

"Loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile", and the case of the Great Eastern Cas. Co. v. Solinsky, 150 Tenn. 206, 263 S. W. 71, 35 A. L. R. 1007, is relied upon. It has no application to the facts presented by the present case. In the case of Colley v. Pearl Assur. Co., 184 Tenn. 11, 195 S. W. (2d) 15, 17, it was pointed out, in discussing the Solinsky case, that it: "involved a suit against the insurance company on a policy of automobile liability insurance, which covered 'collision' only, and did not cover 'upset'. Without collision, but on account of a violent application of the brakes, a rear wheel of the insured car, collapsed and caused the car to turn over. The damage to the car was the result of its impact with the flat surface of the ground. Holding that such damage was not the result of a 'collision' within the accepted meaning of that term, the suit against the insurance company was dismissed."

The evidence in the instant case shows the automobile of the insured collided with a truck and a concrete pier. A collision is defined in Vol. 15, C. J. S., page 1, as: "The act or instance of colliding; a striking against, as where the object struck is a brick, stone, or other solid substance; a striking together, or a violent contact; the meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one."

Counsel for the complainant agrees that liability is asserted under the quoted part of the policy, relating to collisions, hence it is not necessary to consider cases relating to "comprehensive" coverage.

 The evidence sustains the finding of the Chancellor as to the amounts paid by the complainant for repairs.

The decree below is affirmed with interest to this date at the cost of appellant.

Affirmed.

McAmis and Howard, JJ., concur.